### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

CHRISTOPHER OLIVER

       Plaintiff,

v.                                  Case No. 3:19-cv-990-J-32MCR

BPO USA LLC d/b/a
My Ecom Club,

       Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's Motion for Final Default

Judgment and Award of Attorney's Fee and Costs Against Defendant, BPO USA,

LLC ("Motion") (Doc. 14), filed May 15, 2020.[2]  For the reasons stated herein, the

undersigned respectfully recommends that the Motion be **GRANTED in Part** and

**DENIED in Part**.

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; M.D. Fla. R. 6.02.

[2] As of the date of this Report and Recommendation, Defendant has not responded to the present Motion (Doc. 14).  Accordingly, the undersigned will treat the Motion as unopposed.

## I.     Background

On August 23, 2019, Plaintiff Christopher Oliver initiated this action by filing a one-count Complaint against Defendant BPO USA, LLC, doing business as My Ecom Club ("BPO USA"), alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* (Doc. 1.)  In the Complaint, Plaintiff alleges that Defendant is a Florida limited liability company with its principal place of business in Trinity, Florida and conducts business "as My Ecom Club, a 'business consulting' company." (*Id.* at ¶ 11.)  Plaintiff also alleges that Defendant "texted Plaintiff's cell phone number . . . multiple times, despite *clear* written requests from Plaintiff to stop texting [him]." (*Id.* at ¶ 15.) According to Plaintiff:

> some or all of the texts the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" ["ATDS"] which has the capacity to store or produce telephone numbers to be texted, using a random or sequential number generator (including but not limited to a predictive dialer) or a pre-set text; and to dial such numbers as specified by 47 U.S.C. § 227(a)(1) (hereinafter "autodialer texts").

(*Id.* at ¶ 16.)  Specifically, Plaintiff alleges that "[t]he autodialed texts came from multiple phone numbers, indicative of an ATDS," lists some of the phone numbers that the text messages came from, and claims that "[n]early every autodialed text came from a different number, but with similar messages." (*Id.* at ¶ 20.)

Plaintiff also avers that on July 25, 2019, he "contacted Defendant and told them [sic] to quit contacting him entirely." (*Id.* at ¶ 18 (citing "Exhibit A, Plaintiff's

call record to Defendant").)  Plaintiff claims that even after this revocation, he "received no fewer than 15 texts, some multiple times a day and on Sunday."[3] (*Id.* at ¶ 19 (citing "Composite Exhibit B").)  He also claims that "Defendant's corporate policy provided no means . . . to have his cellular number removed from the texting list, or otherwise permit the cessation of and/or suppression of texts to Plaintiff," and that Defendant's ATDS was set up in a manner that made it "virtually impossible for the autodialer texts to stop."  (*Id.* at ¶¶ 23-24.)

In Count I of the Complaint, Plaintiff alleges that Defendant violated the TCPA as none of the texts sent by Defendant were made for "emergency purposes" and were made without Plaintiff's express consent, thereby resulting in various injuries to Plaintiff.  (Doc. 1 at ¶¶ 27-34.)  Plaintiff's alleged injuries include the occupation of his cell phone and cell line by the "unwelcomed texts which made the cellular phone unavailable for legitimate incoming or outgoing calls or texts"; the unnecessary expenditure of his time spent responding to texts and on "unanswered texts by dealing with notifications and pop ups that reflected unwanted texts"; and the "impaired usefulness of these features . . . which are designed to inform the user of important missed communications."  (*Id.* at ¶¶ 29-31.)  Plaintiff also alleges that the texts were a nuisance and annoyance, resulted in the "unnecessary expenditure" of his cell phone's battery power, and that each

---

[3] Plaintiff attached Composite Exhibit B to the Complaint, containing screenshots of ten purported autodialer text messages received on his cell phone between August 1 and August 12, 2019.  (Doc. 4-1.)

text Defendant sent without his "express consent resulted in the injury of trespass to Plaintiff's chattel, namely his cellular telephone and cellular telephone services." (*Id.* at ¶¶ 31-33.)  Plaintiff also alleges Defendant's texts resulted in the "invasion of privacy and intrusion upon his right of seclusion," "stress, embarrassment, indignation, emotional distress, mental distress, and pain and suffering," as well as "loss of happiness, concentration, sleep, and privacy." (*Id.* at ¶ 34.)  He also claims that he "was hindered by the loss of battery life and phone minutes as well as the cost of additional charging, and the intrusion upon and occupation of the capacity of his cell phone." (*Id.*)  Plaintiff alleges these injuries were caused by Defendant "and/or directly related to [] [its] attempts to create a business relationship with Plaintiff that he was clearly uninterested in." (*Id.*)

The Complaint also asserts the following:

35.    Defendant violated the TCPA, with respect to all of its autodialer texts made to Plaintiff's cellular telephone number after Plaintiff revoked consent both orally and in writing to be texted or called without Plaintiff's prior express consent.

36.    The Defendant willfully and/or knowingly violated the TCPA, especially for each of the autodialer texts made to Plaintiff's cellular telephone after Plaintiff notified Defendant [on] July 25, 2019, when Plaintiff withdrew, revoked, and/or terminated any alleged consent Defendant believed it had to contact him, and told Defendant to stop texting him.

37.    Defendant repeatedly placed non-emergency text messages to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C. § 227(b)(1)(A)(iii).

(*Id.* at ¶¶ 35-37.)  As relief, Plaintiff requested statutory, actual, treble, and punitive damages, costs, interest, and any other relief the court deemed just and proper.  (*Id.* at 7.)

On October 10, 2019, Plaintiff filed a return of service averring that on October 2, 2019, the Complaint and Summons were properly served on Defendant's registered agent, Michel A. Giannulis, "in compliance with state statutes."  (Doc. 7 at 1.)  On December 17, 2019, after Defendant failed to answer or otherwise respond to the Complaint, Plaintiff moved for entry of a Clerk's Default pursuant to Fed. R. Civ. P. 55(a), which the Clerk entered on December 18, 2019.  (*See* Docs. 9 & 10.)  On May 15, 2020, Plaintiff filed the present Motion for default judgment against Defendant.[4]  (Doc. 14.)  To date, Defendant has not filed an answer, appeared, or otherwise presented any claims or defenses in this case.  Upon review, the undersigned recommends that the Motion be granted in part for the reasons discussed below.

## II.    Standard

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment.  First, when a party fails to plead or otherwise defend a lawsuit, the clerk of court is authorized to enter a clerk's default against the party.  *See* Fed. R. Civ. P. 55(a).  Second, after the clerk's default is entered, the petitioning party must apply to the court for a default

---

[4] The Motion was filed out of time with permission from the Court.  (*See* Doc. 13.)

judgment, except in limited circumstances when application may be made to the clerk.  *See* Fed. R. Civ. P. 55(b).  A default judgment may be entered "against a defendant who never appears or answers a complaint, for in such circumstances the case never has been placed at issue."  *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1134 (11th Cir. 1986).

All well-pleaded allegations of fact are deemed admitted upon entry of a default, but before entering a default judgment, the court must ensure that it has jurisdiction over the claims and that the complaint adequately states a claim on which relief may be granted.  *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975);[5] *see also GMAC Commercial Mortg. Corp. v. Maitland Hotel Assocs., Ltd.*, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002).  A sufficient basis must exist in the pleadings for the judgment entered.  *See Nishimatsu*, 515 F.2d at 1206.  A defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law."  *See id.*  Rule 8 provides that a complaint must include (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for relief.  *See* Fed. R. Civ. P. 8(a).  A complaint meets the requirements of Rule 8, if in light of the nature of the action, the complaint provides factual allegations,

---

[5] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

which are assumed to be true, sufficient to "raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

Furthermore, "the party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction."  *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (per curiam).  A federal court may exercise subject matter jurisdiction over a claim based on federal question jurisdiction, 28 U.S.C. § 1331.  *Walker v. Sun Trust Bank of Thomasville, GA*, 363 F. App'x 11, 15 (11th Cir. Jan. 19, 2010) (per curiam) ("Absent diversity of citizenship, a plaintiff must present a substantial federal question in order to invoke the district court's jurisdiction." (internal quotation marks omitted)).

The Court must also ensure that the defaulting party was properly served. "It is axiomatic that absent good service, the Court has no *in personam* or personal jurisdiction over a defendant."  *Tacoronte v. Tate & Kirlin Assocs.*, No. 6:13-cv-331-Orl-37DAB, 2013 WL 5970720, at *4 (M.D. Fla. Nov. 8, 2013) (adopting report and recommendation entered on Aug. 6, 2013) (internal citations omitted).  "Without personal service of process in accordance with applicable law, a federal court is without jurisdiction to render a personal judgment against a

defendant." *Id.* (citing *Royal Lace Paper Works, Inc. v. Pest-Guard Prods., Inc.*, 240 F.2d 814, 816 (5th Cir. 1957)).

## III.   Discussion

In the Motion, Plaintiff requests that the Court enter final judgment against Defendant and maintains that the allegations in the Complaint and the evidence presented in support of the Motion demonstrate that Defendant "willfully and/or knowingly" violated the TCPA by sending at least 120 text messages to Plaintiff's cell phone "using an ATDS, a PTDS [predictive telephone dialing system], or an APV [an artificial or pre-recorded voice]," after his revocation of consent on July 25, 2019.  (Doc. 14 at 2-3.)  As a result, Plaintiff seeks an award of $180,000.00 in statutory damages, including treble damages, pursuant to 47 U.S.C. § 227(b)(3).  (*Id.* at 4-6.)  Before entering default judgment, the Court must first determine that it has jurisdiction and that the pleadings adequately state a valid claim for relief.  *Nishimatsu*, 515 F.2d at 1206.  Additionally, the Court must ensure Plaintiff properly executed service of process on Defendant.

### A.   Jurisdiction

Plaintiff brings this action against Defendant for violations of the TCPA.  As such, this matter is properly within the subject matter jurisdiction of this Court. *See* 28 U.S.C. § 1331 (federal question); *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 379 (2012) (holding that "Congress did not deprive federal courts of federal-question jurisdiction over private TCPA suits").  Venue is also proper pursuant to 28 U.S.C. § 1391(b), as the events giving rise to Plaintiff's

claims occurred in this District.  Moreover, the undersigned also finds that Plaintiff properly effectuated service of process on Defendant.[6]  (Doc. 7.) Therefore, the Clerk's entry of default against Defendant was proper and the Court has jurisdiction over this action.

### B.    Plaintiff's TCPA Claims

The Court must first ensure that Plaintiff has properly stated a valid claim for relief under the TCPA.  Federal law prohibits the use of any ATDS or an artificial or prerecorded voice to make any telephone calls, "other than a call made for emergency purposes or made with the prior express consent of the called party," to "any telephone number assigned to a . . . cellular telephone service . . . , unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]"  47 U.S.C. § 227(b)(1)(A)(iii).[7]  To establish a claim under the TCPA, a plaintiff must show that "(1) a call was made to a cell or wireless phone, (2) by the use of any automatic dialing system or an artificial or prerecorded voice, and (3) without prior express consent of the called party." *Augustin v. Santander Consumer USA, Inc.*, 43 F. Supp. 3d 1251, 1253 (M.D.

---

[6] The docket reflects that Defendant's registered agent was served with process on October 2, 2019.  (Doc. 7.)  Plaintiff does not cite any law pursuant to which service was effectuated, but service of process was proper under Fed. R. Civ. P. 4(h)(1) and/or Fla. Stat. § 48.091.  (*See id.*)

[7] "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)."  *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) (citation omitted); *see also Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015) ("The prohibition against auto dialed calls applies to text message calls as well as voice calls.") (citation omitted).

Fla. 2012) (citing 47 U.S.C. § 227(b)(1)(A)).  An ATDS system is defined under the TCPA as "equipment which has the capacity . . . (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  "'A bare allegation' that a defendant used an [ATDS] is not enough."  *Quinn v. Branch Banking & Tr. Co.*, No. 5:19-cv-433-Oc-30PRL, 2019 WL 7567812, at *1 (M.D. Fla. Dec. 20, 2019) (report and recommendation adopted by 2020 WL 136636 (M.D. Fla. Jan. 13, 2020)) (quoting *McGinity v. Tracfone Wireless, Inc.*, 5 F. Supp. 3d 1337, 1340 (M.D. Fla. 2014)).  "Indeed, 'well-pled allegations of an [ATDS] rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages to raise an inference that an [ATDS] was used.'"  *Id.* (quoting *Mesa v. Am. Express Educ. Assurance Co.*, No. 16-CV-24447-HUCK, 2017 WL 2212147, at *5 (S.D. Fla. May 18, 2017)).  "To sufficiently plead the ATDS element of a TCPA claim, a plaintiff may not merely recite the statutory elements of the use of an ATDS or prerecorded voice without alleging additional facts to support those facts."  *Adams v. Ocwen Loan Servicing, LLC*, 366 F. Supp. 3d 1350, 1355-56 (S.D. Fla. 2018).

Moreover, a plaintiff is not required to "prove 'the purpose of the call or the existence of prior express consent' to make out a prima facie case under the TCPA."  *Grace v. Ability Recovery Servs., LLC*, No. 3:18-cv-962-J-39JRK, 2019 WL 2210682, at *2 (M.D. Fla. Apr. 15, 2019) (quoting *Gambon v. R & F Enters., Inc.*, No. 6:14-cv-403-Orl-18GJK, 2015 WL 64561, at *4 (M.D. Fla. Jan. 5, 2015))

(report and recommendation adopted by 2019 WL 3383427 (M.D. Fla. May 13, 2019))).

Here, Plaintiff has set forth the following uncontroverted allegations in his Complaint regarding Defendant's liability under the TCPA: Defendant sent at least 15 text messages to Plaintiff's cell phone after July 25, 2019, the date when he claims he revoked any consent to receive communications from Defendant; Defendant sent the unauthorized texts using an ATDS as evidenced by the fact that most of the messages were sent from different numbers, but with similar content; the text messages were sent after Plaintiff requested that Defendant stop texting him, and, therefore, without his prior express consent; and the automated text messages were not made for emergency purposes.  (*See* Docs. 1, 2, 2-1, 4, 4-1, 14, 14-1, & 14-2.)  Taking Plaintiff's well-pleaded allegations as true, the undersigned finds that Plaintiff properly stated a cause of action under the TCPA.  Accordingly, the undersigned recommends that the Court find that Plaintiff is entitled to default judgment on his claim that Defendant violated the TCPA.[8]

### C.   Plaintiff's Claim for Damages

Having found that Plaintiff established a cause of action under the TCPA, the undersigned must now determine whether a hearing is necessary to

---

[8] The undersigned also notes that Plaintiff's counsel certified that the Motion was served on Defendant.  (*See* Doc. 14 at 6.)

determine the amount of damages.  "[A] judgment by default may not be entered without a hearing [on damages] unless the amount claimed is a liquidated sum or one capable of mathematical calculation."  *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (per curiam); *see also, SEC v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005).  Thus, "[w]here the amount of damages sought is a sum certain, or where an adequate record has been made via affidavits and documentary evidence to show statutory damages, no evidentiary hearing is required."  *Virgin Records Am., Inc. v. Lacey*, 510 F. Supp. 2d 588, 593-94 (S.D. Ala. 2007) (citation omitted).  The undersigned finds that an evidentiary hearing is not necessary because Plaintiff has made an adequate record regarding damages.

Under the TCPA, "[s]uccessful Plaintiffs are entitled to actual damages caused by the violation or $500 for each violation, whichever is greater."  *Gambon*, 2015 WL 64561, at *5 (citing 47 U.S.C. §§ 227(b)(3)(A), (B)).  "If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph [treble damages]."  47 U.S.C. § 227(b)(3).  "The requirement of 'willful[ ] or knowing[ ]' conduct requires the violator to know he was performing the conduct that violates the statute."  *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) (citation omitted).  It is not necessary for the court to find any

malicious or wanton conduct to award treble damages. *Grace*, 2019 WL 2210682, at *3 (citing *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011)).

In the Motion, Plaintiff seeks statutory damages[9] in the amount of $180,000.00, plus interest.[10]  (Doc. 14 at 5-6.)  Plaintiff appears to have calculated treble damages as follows: $1,500.00 ($500 x 3) for each of the 120 automated text messages Plaintiff allegedly received after he requested that Defendant stop texting him.  (*See id.*)  Plaintiff also claims that Defendant's "repeated disregard for Plaintiff's and counsel's attempts to demand texts to Plaintiff's cell phone cease demonstrate[d] a willful and intentional disregard for Plaintiff's consumer rights," warranting an award of treble damages.  (*Id.* at 5.)

"To be awarded treble damages, a plaintiff must prove that the defendant willfully or knowingly performed the conduct that violated the statute."  *Jeffery v. E. Asset Servs., LLC*, No. 8:17-cv-1361-T-27AAS, 2018 WL 3999663, at *2 (M.D.

---

[9] Although in the Complaint Plaintiff indicated he was seeking "statutory damages, actual damages, treble damages, punitive damages, costs, [and] interest" (Doc. 1 at 7), the Motion seeks statutory and treble damages only (*see* Doc. 14 at 5-6). Moreover, although the title of the Motion states that Plaintiff also seeks an award of attorney's fees and costs against Defendant (Doc. 14 at 1), the body of the Motion contains no such request or any arguments in support thereof.  The undersigned, therefore, presumes that Plaintiff only seeks statutory and treble damages.

[10] In the Motion, Plaintiff states that he "is entitled to receive up to $1,500 per willful text, totaling *$187,500*, plus interest thereon" in damages.  (Doc. 14 at 5 (emphasis added).)  However, this amount appears to be a scrivener's error as Plaintiff requests a total of $180,000.00 in statutory damages in the "Wherefore" clause based on a total of 120 texts at the trebled rate of $1,500.00 per text.  (*Id.* at 5-6.)  There is no clear explanation or basis for the $187,500.00 amount.  (*Id.*)

Fla. July 27, 2018) ( report and recommendation adopted by 2018 WL 3999639 (M.D. Fla. Aug. 21, 2018)) (citing 47 U.S.C. § 227(b)(3)(C); *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015)).  Here, however, the record does not adequately support Plaintiff's allegations that Defendant acted willfully or knowingly.  *See Jeffery*, 2018 WL 3999663, at *2 (rejecting plaintiff's request for treble damages under the TCPA because the record did not support finding defendant acted willfully or knowingly and stating that the allegations supporting plaintiff's claims for treble damages were legal in nature and did not need to be accepted as true); *see also Ris v. ICollect.com, Corp.*, No. 8:16-cv-2414-T-30AAS, 2017 WL 2620545, at *2 (M.D. Fla. June 16, 2017) ("Plaintiff's Complaint does not include factual allegations sufficient for the Court to find that Defendant willfully or knowingly violated the TCPA. Accordingly, the Court will not award more than $500 per TCPA violation."). Additionally, "[i]n similar situations, when liability is established through default judgment rather than on the merits, courts routinely award the minimum statutory damages."  *Jeffery*, 2018 WL 3999663, at *2 (quoting *Castro v. Capital One Servs., LLC*, No. 8:16-cv-889-T-17TGW, 2017 WL 4776973, at *4 (M.D. Fla. Aug. 3, 2017)).  As such, the undersigned recommends the Court award Plaintiff no more than $500.00 per TCPA violation.

With respect to the number of text messages Plaintiff alleges to have received in violation of the TCPA, the undersigned notes that in the Complaint, he initially claimed to have received from Defendant "no fewer than 15 texts,

some multiple times a day and on Sunday," and attached screenshots of ten of the alleged text messages as an exhibit to the Complaint.  (Doc. 1 at ¶ 19; Doc. 4-1.)  In the body of the Motion, Plaintiff claims he received at least 120 text messages from Defendant on "his cell phone following his revocation of consent on July 25, 2019."  (Doc. 14 at 3, 5-6.)  Similarly, in his affidavit dated May 14, 2020, Plaintiff claims that he "received in excess of one hundred twenty (120) text messages from Defendant . . . to [his] personal cell phone, despite multiple revocations."  (Doc. 14-2 at 1.)  In the same affidavit, Plaintiff also claims that "[f]ollowing that revocation on July 25, 2019, [he] received at least one hundred fifteen (115) text messages from Defendant."  (*Id.*)  Plaintiff also attached to the Motion screenshots of seventy (70) text messages he purportedly received from Defendant in August and September of 2019, after the Complaint had been filed. (*See id.* at 3-10.)

Since there is a conflict between the number of text messages at issue as alleged in the Complaint, the Motion, and the affidavit in support thereof, the undersigned will make a recommendation on the amount of damages based on the eighty (80) text messages for which Plaintiff provided screenshots.  "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default.  Rather, the Court determines the amount and character of damages to be awarded." *Broad. Music, Inc. v. PRB Prods., Inc.*, No. 6:13-cv-1917-Orl-31KRS, 2014 WL 3887509, at *2 (M.D. Fla. Aug. 7, 2014)) (quoting *Miller v. Paradise of Port*

*Richey, Inc.,* 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999)) (internal quotation marks omitted).  As such, the undersigned recommends that the Court find Defendant liable for eighty (80) violations of the TCPA and allow Plaintiff to recover $500.00 for each violation for a total award of $40,000.00 in statutory damages.

## IV.     Conclusion

Based on the foregoing, and after review of the materials submitted, the undersigned respectfully recommends that Plaintiff be awarded $40,000.00 in statutory damages.  This judgment shall bear interest at the rate prescribed by 28 U.S.C. § 1961(a), from the date of the entry of the judgment.

Accordingly, it is respectfully **RECOMMENDED** that:

1.     Plaintiff's Motion (**Doc. 14**) be **GRANTED** to the extent stated herein.

2.     The Clerk of Court be directed to enter judgment in favor of Plaintiff and against Defendant in the amount of $40,000.00 in statutory damages, plus post-judgment interest at the statutory rate.

3.     The Clerk be further directed to terminate any pending motions and close the file.

**DONE and ENTERED** in Jacksonville, Florida on November 24, 2020.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record

BPO USA, LLC
c/o Michael A. Giannulis, Registered Agent
3152 Little Road, Suite 114
Trinity, Florida 34655